## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## SOUTHERN DIVISION
## AT LONDON

| | |
|---|---|
| **BRIAN KEITH DAMRELL** | **CIVIL ACTION NO. 16-161-KKC-CJS** |
| **Petitioner,** | |
| **V.** | |
| **JAMES DAVID GREEN, Warden,** | **REPORT and RECOMMENDATION** |
| **Respondent.** | |

Brian Keith Damrell, *pro se*, brings twelve claims for habeas relief in his 28 U.S.C. § 2254 petition. The Respondent[1] argues that Damrell's claims are either non-cognizable, meritless, or procedurally defaulted. Having reviewed the record and the parties' arguments, it is recommended that Damrell's § 2254 petition **be denied**.

## I.    BACKGROUND

### A.    Factual Background

In 2010, Trooper Scotty Pennington attempted to pull over Damrell after seeing him ride a four-wheel ATV on a public road. *Damrell v. Commonwealth*, No. 2014-CA-000680-MR, 2015 WL 8527397, at *1 (Ky. Ct. App. Dec. 11, 2015). Damrell fled and ultimately escaped by exiting the road onto nearby railroad tracks. *Id.* During the pursuit, Trooper Pennington observed items

---

[1] When Damrell originally filed his Petition, he was incarcerated at the Eastern Kentucky Correctional Complex, where Kathy Litteral was previously the Warden. Damrell is still incarcerated at the Eastern Kentucky Correctional Complex, but the Warden is now James David Green. The only proper respondent to a habeas petition is the petitioner's custodian. *See* Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts. Therefore, the Court substitutes James David Green, Warden, in the case caption, which substitution shall be recorded by the Court Clerk on the case docket sheet.

falling from Damrell's ATV, which were later identified "as supplies used to make methamphetamine and a mason jar containing an active methamphetamine lab." *Id.*

### B.     Procedural Background

Damrell was eventually arrested, and a jury convicted him of operating an ATV on the public roadway, fleeing or evading police in the second degree, and manufacturing methamphetamine, second or subsequent offense. *Damrell v. Com.*, No. 2011-SC-000627-MR, 2012 WL 4327800, at *1 (Ky. Sept. 20, 2012). After being sentenced to twenty years in prison, he appealed directly to the Kentucky Supreme Court, *see* Ky. Const. § 110(2)(b), arguing that the trial court erred by: permitting his prior possession convictions to enhance the penalty for manufacturing methamphetamine; allowing the introduction of meth and meth-precursors evidence because there was a broken chain of custody and the evidence had been destroyed; and failing to issue a directed verdict of not guilty based on the insufficiency of the evidence. *Id.* at *1-3; (R. 21-2, Page ID 405-06). Finding no error, the Kentucky Supreme Court affirmed. *Damrell*, 2012 WL 4327800, at *1.

Damrell moved, *pro se*, to vacate, set aside, or correct his sentence under Kentucky Rule of Criminal Procedure 11.42, arguing that his trial counsel was ineffective for failing to tell him about a plea deal offered by the prosecution and for failing to impeach and investigate Trooper Pennington as a prosecution witness. *Damrell*, 2015 WL 8527397, at *1; (R. 21-2, Page ID 321-22). The state trial court scheduled an evidentiary hearing on Damrell's uncommunicated-plea-deal claim but denied his other claim outright. (R. 21-2, Page ID 339).

One day before the evidentiary hearing, Damrell moved to supplement his RCr 11.42 motion, arguing that: his constitutional rights to due process and to present a defense were violated by the destruction of items after testing for the presence of meth; Trooper Pennington's failure to

test items for fingerprints violated police procedures and state law; the trial court erred in failing to suppress a black shaving kit bag as evidence; and his trial counsel was ineffective for failing to emphasize to the jury the "pattern of [Trooper] Pennington's consistent violations of procedure and miscues." (*Id.* at Page ID 347-54).  After the evidentiary hearing, the state trial court rejected Damrell's uncommunicated-plea-deal claim (*id.* at Page ID 361) and, in a separate order, denied him permission to supplement his RCr 11.42 motion (*id.* at Page ID 401).  Although the state trial court denied Damrell permission to supplement his RCr 11.42 motion, it "considered the issues in [his] supplemental motion [at the evidentiary hearing] and found that each was addressed at trial and rejected by the jury." *Damrell*, 2015 WL 8527397 at \*4.

Damrell's appeals from the denial of his RCr 11.42 motion and the motion to supplement his RCr 11.42 motion were consolidated.  The Kentucky Court of Appeals rejected on the merits both of Damrell's ineffective-assistance-of-counsel claims from his initial RCr 11.42 motion.  *Id.* at \*2-4.  The Court of Appeals determined that the state trial court erred by denying Damrell permission to supplement his initial RCr 11.42 motion.  *Id.* at \*4.  However, it found the error harmless, concluding that "the first three issues in Damrell's supplemental motion [were] procedurally barred because each was, or could have been, raised on direct appeal." *Id.* at \*5.  And it determined that "[t]he fourth issue . . . [was] simply a restatement of his original claim regarding trial counsel's handling of Trooper Pennington," which it had rejected on the merits.  *Id.*  The Kentucky Supreme Court denied discretionary review.  (R. 21-2, Page ID 703).

In June 2016, Damrell filed a *pro se* state court habeas petition, alleging that Trooper Pennington committed official misconduct, the trial judge committed judicial misconduct, and his trial counsel breached a contract and his fiduciary duty.  (R. 18, Page ID 251-57; R. 18-1, Page ID 261-63).

3

In August 2016, Damrell filed this § 2254 petition, raising the claims from his direct appeal and RCr 11.42 motions. (R. 1, Page ID 18-46; *see also* R. 16). He moved for leave to hold his § 2254 petition in abeyance pending the resolution of his state court habeas petition (R. 3), which this Court granted (R. 15).

The state trial court denied Damrell's state habeas petition, and the Kentucky Court of Appeals affirmed, concluding that his claims as to his trial counsel were addressed as ineffective-assistance-of-counsel claims in his RCr 11.42 motion, and that Kentucky Civil Rule 60.02 was "the proper vehicle for relief" for his remaining claims.[2] (*See* R. 18-1, Page ID 263).

In January 2017, Damrell moved to supplement his § 2254 petition to raise claims brought in his state court habeas petition. (*See id.*, Page ID 251). This Court granted the motion and placed the case back on the active docket. (R. 19). Damrell filed a supplemental memorandum in support of his first nine claims (R. 20), the Respondent filed an answer (R. 21), which it later supplemented (R. 29), and Damrell replied (R. 35). The petition is now ripe for decision.

## II.    ANALYSIS

### A.    Legal Standard

Where, as here, a § 2254 petition was filed after April 24, 1996, review of the petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under the AEDPA, a petitioner may obtain habeas relief if the state court's adjudication of his claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court

---

[2] The docket sheet for Damrell's underlying state-court-criminal conviction, *see Commonwealth v. Damrell*, No. 10-CR-00131 (Rockcastle County Circuit Court) (docket sheet), indicates that the trial court denied a CR 60.02 motion on December 13, 2017, but offers no information about the content of the motion.

of the United States," or "was based on an unreasonable determination of facts in light of the evidence presented in the state court proceeding." § 2254(d)(1)-(2)

The "contrary to" and "unreasonable application" clauses of the first exception under § 2254(d)(1) have independent meaning. *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). First, "[a] state court's decision is contrary to clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a different result from [this] precedent." *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (quoting *Williams*, 529 U.S. at 405-06).

Second, a state court's decision involves an "unreasonable application" of federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decision but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted).

Thus, under the AEDPA, the question for this Court is "not whether a federal court believes the state court's determination was incorrect but whether the determination was unreasonable—a substantially higher threshold." *Schriro v. Langrigan*, 550 U.S. 465, 473 (2007). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 102-03.

Moreover, a petitioner carries the burden of proof, and "this is a difficult to meet, and highly deferential, standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal citations omitted). Further, factual findings of the state court are presumed correct unless the petitioner presents clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). Section 2254 relief is grounded in the rationale that federal habeas review exists to ensure that individuals are not unconstitutionally imprisoned; therefore, it is intended to cure only serious constitutional errors, not merely to correct errors of fact or re-litigate state adjudications. *See Herrera v. Collins*, 506 U.S. 390, 401 (1993) ("Federal courts are not forums in which to re-litigate state trials.").

The AEDPA's standard of review under 28 U.S.C. § 2254(d) applies only to claims that were adjudicated on the merits. *See Nields v. Bradshaw*, 482 F.3d 442, 449 (6th Cir. 2007) (citation omitted). Where the state court did not rule on the merits of a petitioner's claim, application of a *de novo* standard of review is appropriate. *Id.* at 450. In determining whether a claim was adjudicated on the merits such that AEDPA's heightened deference applies, the habeas court must look to the last reasoned state-court opinion to determine the basis for the state court's rejection of the petitioner's federal constitutional claim. *Yist v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc).

A federal court cannot grant habeas relief if there is still a potential state remedy for the state courts to consider. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (citing 28 U.S.C. § 2254(b)(1)). To be deemed properly exhausted, therefore, each claim must have been fairly

presented to the state courts. *See id.* at 845 ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."); *see also Wagner v. Smith*, 581 F.3d 410, 414-15 (6th Cir. 2009) ("Fair presentation requires that the state courts be given the opportunity to see both the factual and legal basis for each claim."). The exhaustion requirement "affords state courts an opportunity to consider and correct any violation of federal law, thus expressing respect for our dual judicial system while also furnishing a complete record of a petitioner's federal claim as litigated in the state court, including the state court of last resort." *Hafley v. Sowders*, 902 F.2d 480, 482 (6th Cir. 1990). When a petitioner has failed to fairly present his claims to the state courts and no state remedy remains, his claims are procedurally defaulted and are barred from habeas review. *See Woolbright v. Crews*, 791 F.3d 629, 631 (6th Cir. 2015).

In cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Barton v. Warden, Southern Ohio Correctional Facility*, 786 F.3d 450, 464 (6th Cir. 2015) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). The Sixth Circuit uses a four-part test to determine whether federal habeas review is precluded due to a petitioner's failure to observe a state procedural rule. *See Barton*, 786 F.3d at 464 (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). Under this test, courts examine (1) whether the petitioner failed to comply with a state procedural rule that is applicable to petitioner's claim; (2) whether the state courts actually enforced the state procedural sanction; (3) whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to

foreclose review of a federal constitutional claim; and (4) the petitioner demonstrates that there was cause for his failure to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id.*

**B.    Claims**

Damrell raised his first three habeas claims on direct appeal, which the Kentucky Supreme Court rejected on the merits.

**1.    Use of Prior Possession Convictions to Enhance the Penalty for Manufacturing Methamphetamine**

In his first claim, Damrell argues that the state courts erred by permitting his prior possession convictions to enhance the penalty for his manufacturing-meth conviction. (R. 20, Page ID 274). The Respondent argues that this claim is not cognizable in federal habeas proceedings. (*See* R. 29, Page ID 727-28).

On direct appeal, the Kentucky Supreme Court rejected Damrell's claim, concluding that, as a matter of state law, his manufacturing-meth conviction was properly enhanced by two of his prior drug-possession convictions. *Damrell*, 2012 WL 4327800, at *1-2. Citing various Kentucky statutes and cases, Damrell argues that this decision was wrong. (R. 20, Page ID 274-77). His argument, however, illuminates the non-cognizable nature of his claim.

"A violation of state law is not cognizable in federal habeas corpus unless such error amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution." *Cristini v. McKee*, 526 F.3d 888, 897 (6th Cir. 2008). Here, Damrell does not argue a Federal constitutional violation beyond his summary assertion that "[i]t violates due process when a State does not follow its own laws." (R. 20, Page ID 276). Even

8

assuming this legal proposition were true,[3] Kentucky did follow its own law here.  Although Damrell disagrees with the Kentucky Supreme Court's interpretation of state law, this Court may not.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.");  *Cristini*, 526 F.3d at 897 (A federal court "must accept as valid a state court's interpretation of the statutes and rules of practice of that state.").  Damrell's summary citation to *Missouri v. Hunter*, 459 U.S. 359, 368, (1983), does not change this result.  (R. 35, Page ID 756).  The cited portion of that case simply stands for the proposition that, while a Federal court is bound by a state's construction of its own laws, a Federal court is not bound by a state court's interpretation of the Federal constitution.  But here there is no federal-constitutional interpretation by the Kentucky Supreme Court at issue.  Rather, the only issue concerns statutory-criminal enhancements under state law.  Accordingly, Damrell's claim is non-cognizable.

### 2.    Introduction of Meth and Meth Precursors When There was a Broken Chain of Custody and the Evidence had been Destroyed

In his second claim, Damrell argues that the state courts erred by allowing evidence of meth and methamphetamine precursor evidence to be admitted because there was a break in the chain of custody and the evidence was destroyed.  (R. 20, Page ID 277).  Recognizing that this claim implicates two legal issues, the Respondent argues that the chain-of-custody issue is non-cognizable and that the destruction-of-the-evidence issue fails on the merits because Damrell failed to show that the evidence was destroyed in bad faith.  (*See* R. 29, Page ID 728-30).

### a.    Chain of Custody

---

[3] A state's failure to follow its own procedures does not necessarily implicate Federal due process concerns.  *Rarden v. Warden, Warren Corr. Inst.*, No. 1:12-CV-660, 2014 WL 497266, at *2 (S.D. Ohio Feb. 7, 2014), *report and recommendation adopted sub nom. Rarden v. Warren Corr. Inst.*, No. 1:12-CV-660, 2015 WL 5561380 (S.D. Ohio Sept. 22, 2015).

On direct appeal, the Kentucky Supreme Court rejected Damrell's claim "that a sufficient chain of custody was not established to introduce the evidence of the methamphetamine at trial," reasoning that the Commonwealth did not have to establish a perfect chain of custody so long as there was persuasive evidence that a reasonable probability existed that the evidence was not altered. *Damrell*, 2012 WL 4327800, at *2. The Supreme Court noted that testimony at trial was sufficient to show that the evidence had not been altered. *Id.* Moreover, it noted that defects in the chain-of-custody issue did not concern admissibility but went to the weight of the evidence. *Id.*

Damrell argues that the Supreme Court's decision was incorrect based on Kentucky case law and police procedures. (R. 20, Page ID 279-81). However, as before, Damrell's state-law issue does not implicate federal due process concerns and is thus not cognizable. *See Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) ("This is a claim that the state trial court erred in the application of state law, specifically a ruling on evidence, and standing alone, this claim is simply not cognizable on habeas review."); *Gibson v. Jackson*, No. 206-CV-12793, 2007 WL 3227579, at *5 (E.D. Mich. Oct. 31, 2007) ("Petitioner's issue of the chain of custody of the evidence is a state law evidentiary issue and is therefore not appropriate for federal habeas review.").

### b.    Destruction of Evidence

The Kentucky Supreme Court rejected Damrell's claim that the destruction of meth evidence violated his "Due Process right to confrontation and his right to present a meaningful defense." *Damrell*, 2012 WL 4327800, at *3. Citing *Arizona v. Youngblood*, 488 U.S. 51, 58, (1988), the Kentucky Supreme Court concluded that nothing in the record showed that the evidence had been destroyed in bad faith. *Id.* Moreover, nothing indicated "that the destroyed evidence would have exculpated [Damrell] anymore than it would have implicated him." *Id.*

Damrell maintains that he was denied the right to present a meaningful defense by the destruction of this evidence, arguing that *Brady v. Maryland*, 373 U.S. 83 (1963), controls rather than *Youngblood*. (R. 20, Page ID 277-79). He is wrong. *Brady* applies to cases where the prosecution *suppresses* material evidence that is *favorable* to the defense. *Wilson v. Sheldon*, 874 F.3d 470, 478 (6th Cir. 2017); *see also Rogers v. Haas*, No. 211-cv-15485, 2013 WL 3188849, at *9 (E.D. Mich. Apr. 8, 2013), *supplemented*, No. 2:11-CV-15485, 2013 WL 3188852 (E.D. Mich. May 24, 2013), *and report and recommendation adopted*, No. 11-15485, 2013 WL 3190604 (E.D. Mich. June 20, 2013), *and report and recommendation adopted*, No. 11-15485, 2013 WL 3190604 (E.D. Mich. June 20, 2013) (noting that *Brady* did not apply where petitioner alleged that police failed to test evidence). Here, *Youngblood* applies because Kentucky failed to "preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant."[4]  488 U.S. at 57.

Accordingly, Damrell must show that Kentucky officials acted in bad faith by failing to preserve the evidence, that they knew its exculpatory value before the destruction, and that he could not obtain comparable evidence. *Wilson*, 874 F.3d at 479. Bad faith requires a conscious effort to suppress evidence, *id.*, negligence or even gross negligence is insufficient, *Monzo v. Edwards*, 281 F.3d 568, 580 (6th Cir. 2002). Damrell has not attempted to meet this standard, mistakenly believing that he does not have to show bad faith. (R. 20, Page ID 278). Additionally, as the Kentucky Supreme Court noted, the record does not reveal any bad faith on the part of Kentucky officials. Accordingly, the Kentucky Supreme Court's decision was not unreasonable.

### 3.    Sufficiency of the Evidence

---

[4] Specifically, Damrell speculates that the items could have been tested for fingerprints or to confirm the presence of meth. (*See* R. 20, Page ID 279).

In his third claim, Damrell argues that he was entitled to a directed verdict of acquittal as to all charges because the evidence was insufficient to convict him.  (R. 20, Page ID 281).  The Respondent argues that this claim lacks merit because the evidence was sufficient to sustain Damrell's convictions.  (*See* R. 29, Page ID 730-31).

On direct appeal, the Kentucky Supreme Court noted that there was testimony favorable to Damrell—three prisoners testified that they could not positively identify Damrell as the ATV rider and Damrell's girlfriend and brother testified that Damrell was with them when the incident occurred.  *Damrell*, 2012 WL 4327800, at *3.  However, it concluded that it would not have been clearly unreasonable for a jury to convict Damrell based on Trooper Pennington's positive identification testimony.  *Id.*

Damrell demurs at this reasoning, reiterating the favorable testimony on his behalf and emphasizing the lack of physical evidence tying him to the crimes.  (R. 20, Page ID 281-86; R. 35, Page ID 761-64).  However, his view of the evidence is misfocused.

In evaluating a sufficiency-of-the-evidence claim, this Court applies the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), considering "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Accordingly, the emphasis here is not on the evidence favorable to Damrell, but the evidence favorable to the prosecution. Additionally, the Court may not "reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury."  *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). Moreover, "even were [this Court] to conclude that a rational trier of fact could not have found [Damrell] guilty beyond a reasonable doubt, on habeas review, [it] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable."  *Id.*

12

Here, the contested issue is simply identification—whether it was Damrell on the ATV with the mobile meth lab. Damrell is right that the prisoners with Trooper Pennington did not positively identify him, that he had alibi witnesses, and that there was a lack of certain physical evidence tying him to the crimes, e.g., fingerprint evidence. However, the pertinent takeaway is that Trooper Pennington positively identified him—this testimony alone is sufficient for *any* rational trier of fact to conclude that it was Damrell on the ATV. *See O'Hara v. Brigano*, 499 F.3d 492, 500 (6th Cir. 2007) (noting that victim's testimony was sufficient to convict the petitioner despite lack of corroborating witnesses or physical evidence). While Damrell would like the Court to weigh other evidence to reach a different conclusion—it may not do so. *See Brown*, 567 F.3d at 205. Accordingly, the Supreme Court's decision was not unreasonable.

Damrell raised his next two habeas claims alleging ineffective-assistance-of-counsel in his initial RCr 11.42 motion, which the Kentucky Court of Appeals rejected on the merits.[5] To prevail on an ineffective-assistance-of-counsel claim, a petitioner must show that (1) counsel's performance was constitutionally deficient, and (2) counsel's deficient performance so prejudiced the defense as to render the trial unfair and undermine confidence in the reliability of the outcome. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult," because both *Strickland* and § 2254(d) are "highly deferential" and when both the standards apply together, review is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citations omitted).

### 4.    Uncommunicated Plea Deal

---

[5] As noted earlier, the Kentucky Supreme Court declined discretionary review of Damrell's appeal.

In his fourth claim, Damrell argues that his trial counsel was ineffective because he failed to communicate a four-year-plea deal offered by the prosecution, a fact he alleges he first learned after his conviction. (R. 20, Page ID 290). The Respondent argues that this claim lacks merit because counsel did inform Damrell about the plea offer. (*See* R. 29, Page ID 731-32).

On direct appeal, the Kentucky Court of Appeals' resolution of this claim came down to whose account of the events were to be believed. *See Damrell*, 2015 WL 8527397, at *3. At the evidentiary hearing, Damrell's trial counsel testified that he twice communicated a four-year-plea deal to Damrell, once the day before trial and once while the jury was deliberating, but Damrell rejected the offer both times. *Id.* Damrell testified that counsel told him about a ten-year offer, but never told him about the four-year offer, which he asserted that he would have accepted. *Id.* The Court of Appeals found no error in the trial court's determination that Damrell's counsel was more credible for three reasons: (1) Damrell's counsel provided a more detailed account of the events; (2) a trial witness testified that he advised Damrell to take the deal and thus corroborated counsel's account; and (3) Damrell stated in his RCr 11.42 motion that counsel failed to communicate any plea offer but later testified that he communicated a ten-year offer and thus he was not credible. *Id.*; (*see* R. 21-2, Page ID 359-62 (state trial court order on RCr 11.42 motion)).

Damrell argues that this decision was unreasonable because the trial witness did not corroborate the four-year offer, he did not state in his RCr 11.42 motion that counsel failed to communicate *any* plea offer, and the record was devoid of evidence that trial counsel presented the four-year offer. (R. 20, Page ID 290-96; R. 35, Page ID 765-67). There is some merit to *part* of Damrell's argument.

First, the video record shows that the trial witness (who purportedly corroborated Damrell's counsel's account) testified only that he hoped that Damrell would plead guilty because he

14

believed Damrell would otherwise "get a whole lot of time." (*See* Trial Video 8/1/2011 4:09-10 p.m.). Notably, the witness never corroborated counsel's communication of the specific four-year offer. Additionally, Damrell correctly points out that he never said that counsel failed to present "*any*" plea offer in his RCr 11.42 motion. (R. 21-2, Page ID 320-21). Rather, he stated that counsel failed to present "*a* plea bargain offer" and then later made clear that he was specifically referring to the four-year offer. (*See id.* (emphasis added and capitalization omitted)).

Regardless, Damrell's argument—that the record is devoid of evidence that counsel presented the four-year offer—fails, as does his habeas claim. Counsel's testimony at the evidentiary hearing *is evidence* that counsel communicated the four-year offer. The state courts' conclusion that counsel presented this offer is "presumed correct absent clear and convincing evidence to the contrary" under § 2254(e)(1). *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Damrell has not offered clear and convincing evidence that undermines the state courts' determination that counsel was a more credible witness because counsel's account was full of detail. *See Fargo v. Phillips*, 58 F. App'x 603, 607 (6th Cir. 2003) ("The state court's determination that counsel's testimony was more credible than the witnesses' testimony was not unreasonable. There is no clear and convincing evidence to justify a rejection of the trial court's credibility finding."). Rather, he merely denies that he was offered the plea deal and states that the state courts unreasonably relied "on the credibility of (skilled and well educated) trial counsel" rather than an "undereducated layman of the law." (R. 20, Page ID 292). Such arguments do not meet Damrell's burden of rebutting the state courts' factual determination and thus the state courts did not make an unreasonable determination of the facts or law.

### 5.    Failure to Investigate and Impeach Trooper Pennington

In his fifth claim, Damrell argues that his trial counsel was ineffective for failing to investigate and impeach Trooper Pennington as a prosecution witness. (R. 20, Page ID 297). Specifically, he contends that counsel should have confronted Trooper Pennington about whether he threatened Scott Gadd[6] to testify falsely against Damrell and about Trooper Pennington's alleged infatuation with Damrell's girlfriend. (*Id.*). The Respondent argues that this claim fails on the merits. (R. 29, Page ID 732-33).

On direct appeal, the Kentucky Court of Appeals' rejected this claim, concluding that the record showed that counsel did explore witness coercion by filing "a Motion to Produce Exculpatory Evidence," which specifically requested information about any leniency or deals offered to any witnesses in the case, and by questioning Trooper Pennington and several witnesses about "whether Trooper Pennington threatened or promised benefits to them in exchange for their testimony." *See Damrell*, 2015 WL 8527397, at *4. Additionally, counsel considered Trooper Pennington's alleged romantic interest in Damrell's girlfriend but decided not to pursue the issue because "he did not need a 'gimmick defense.'" *Id.*

Damrell argues that the Kentucky Court of Appeals overlooked his argument about Scott Gadd's affidavit and that the real reason counsel failed to pursue Trooper Pennington's infatuation with his girlfriend was because he did not want to harm Trooper Pennington's reputation or marriage. (R. 20, Page ID 297-300; R. 35, Page ID 767-69).

First, while the Kentucky Court of Appeals did not specifically mention Gadd, it effectively addressed the issue, noting that counsel explored witness coercion by specifically requesting from the prosecution evidence of deals offered to witnesses and by questioning Trooper Pennington and witnesses at trial about whether Trooper Pennington offered them leniency or threatened them in

---

[6] Damrell also refers to Scott Gadd as "Randy Gadd." (R. 21-2, Page ID 321).

exchange for their testimony. Further, although Damrell has provided Gadd's affidavit (R. 16-2, Page ID 222-24) on habeas review, he cannot fault the Kentucky Court of Appeals for not addressing it because he did not attach it to his RCr 11.42 motion—and this Court may not now consider it. *See Cullen*, 563 U.S. at 182 ("[T]he record under [habeas] review is limited to the record in existence at that same time i.e., the record before the state court."); ( R. 21-2, Page ID 321, 564). Lastly, it is important to note that Gadd did not even testify at trial, so Damrell cannot claim that Trooper Pennington coerced him into falsely testifying. (*See* R. 21-2, Page ID 412).

Second, Damrell misconstrues the record regarding counsel's decision not to pursue Trooper Pennington's alleged romantic interest in his girlfriend. The issue was addressed during a hearing on the Commonwealth's motion in limine on July 29, 2011. (*See* R. 29, Page ID 732). Damrell's counsel said that he would not insinuate a romantic interest because he did not need a "gimmick defense." *Damrell*, 2015 WL 8527397, at *4. Damrell focuses on counsel's follow-up statement that he did not wish to ruin Trooper Pennington's reputation or marriage and that Kentucky boys don't hang each other out to dry. (R. 20, Page ID 298). Damrell asserts that these statements reveal counsel's true motivation to not pursue the issue.

Damrell reads too much into the record. From the context of the statement, counsel was clearly indicating that the romantic-interest issue was not worth pursuing legally—because it was a gimmick defense—*and* that he saw no reason to ruin Trooper Pennington's reputation without cause. Moreover, the pertinent question is whether the Kentucky Court of Appeals unreasonably adjudicated this claim. It did not, as it was reasonable for the court to conclude that the self-interest

tainting the allegation made the claim "dubious at best" and could have risked "possibly offend[ing] the jury" if presented.[7]  *Damrell*, 2015 WL 8527397, at *4.

Damrell raised his next four habeas claims in his supplemental RCr 11.42 motion.  (R. 21-2, Page ID 347-55).  The Kentucky Court of Appeals determined that the first three claims were "procedurally barred because each was, or could have been, raised on direct appeal."  *Damrell*, 2015 WL 8527397, at *5.  It concluded that his remaining claim was "simply a restatement of his original claim regarding trial counsel's handling of Trooper Pennington," which it had rejected on the merits.  *Id.*; (*see* discussion of Claim 5).  The Respondent argues that the first three claims are procedurally defaulted, that Damrell fails to show cause and prejudice to excuse the default, and that his remaining claim is meritless.  (R. 29, Page ID 733-34).  Damrell responds that he could not have raised his first three claims on direct appeal because they allege ineffective assistance of counsel and that the Kentucky Court of Appeals misconstrued his last claim.  (R. 20, Page ID 300-01; R. 35, Page ID 769-70).

### 6.     Destruction of Evidence Before Independent Testing

In his sixth claim, Damrell argues that the Kentucky State Police Lab's destruction of "any and all confiscated items" before he could independently test the items denied him the right to present a defense.[8]  (R. 20, Page ID 302).  He argues that this claim is not procedurally defaulted because ineffective-assistance-of-counsel claims cannot be raised on direct appeal in Kentucky.  (*See id.* at Page ID 300).

---

[7] Because this reason alone is sufficient for habeas review, the Court need not discuss the Kentucky Court of Appeals' additional rationale that the only evidence concerning the purported infatuation was the girlfriend's testimony, which had been impeached by Trooper Pennington's arrest of her on at least two occasions.  *See Damrell*, 2015 WL 8527397, at *4.

[8] Damrell's second and sixth claims are remarkably similar; however, his second claim seems to focus on the destruction of meth evidence, while his sixth claim concerns other evidence.

Damrell is correct that, generally, a defendant cannot raise ineffective-assistance-of-counsel claims on direct appeal in Kentucky. *See Caraway v. Commonwealth*, 459 S.W.3d 849, 853 (Ky. 2015). However, he did not present this claim as an ineffective-assistance-of-counsel claim in his supplemental RCr 11.42 motion; rather, he presented it as a denial-of-the-right-to-present-a-defense claim. (*See* R. 21-2, Page ID 347). Accordingly, it is appropriate to apply the Sixth Circuit's four-part test to determine whether he procedurally defaulted this claim. *See Maupin*, 785 F.2d at 138.

First, Damrell failed to comply with Kentucky's procedural rule that prohibits a defendant from raising issues in a post-conviction proceeding that were or could have been raised on direct appeal. *See Damrell*, 2015 WL 8527397, at *5 (citing *Thacker v. Com.*, 476 S.W.2d 838, 839 (Ky. 1972)). Second, the state court enforced the rule, concluding that this claim was "procedurally barred because [it] was, or could have been, raised on direct appeal." *Id.* Third, the state court's refusal to hear claims in a post-conviction proceeding that could have been raised on direct appeal "is an independent and adequate state ground for denying review." *Wheeler v. Simpson*, 852 F.3d 509, 515 (6th Cir.), *reh'g denied* (Apr. 12, 2017), *cert. denied sub nom. Wheeler v. White*, 138 S. Ct. 357, 199 L. Ed. 2d 265 (2017); *see also Wilson v. Webb*, 107 F. App'x 516, 518 (6th Cir. 2004). ("Rule 11.42 is an adequate and independent ground foreclosing review of a petitioner's habeas claim."). And fourth, Damrell does not even attempt to demonstrate cause and prejudice to excuse his procedural default because he mistakenly believes that this claim in not procedurally defaulted. (*See* R. 20, Page ID 300).

However, in his reply, he makes cursory references to being "actually innocent," of his offenses (R. 35, Page ID 755), which can serve as a gateway to having an otherwise procedurally-barred claim adjudicated on the merits, *Williams v. Bagley*, 380 F.3d 932, 973 (6th Cir. 2004).

19

Damrell's summary assertions of actual innocence, however, fail to excuse his procedural default because he has not submitted new evidence showing "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Lastly, "state court remedies are no longer available" to Damrell, *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006), because the time to file a direct appeal raising this issue has long passed, *see* RCr 12.04. *See also Baker v. Bottom*, No. 14-cv-358-JMH-CJS, 2017 WL 1731029, at *5 (E.D. Ky. Feb. 14, 2017), *report and recommendation adopted*, No. 5:14-CV-358-JMH-CJS, 2017 WL 1658824 (E.D. Ky. May 1, 2017). Accordingly, this claim is procedurally defaulted.

### 7.    Trooper Pennington's Failure to Test Items for Fingerprints

In his seventh claim, Damrell argues that Trooper Pennington violated police procedures and state law by failing to test items for fingerprints, which he asserts would have proven his innocence. (R. 20, Page ID 302-03). As before, he argues that this claim is not procedurally defaulted because ineffective-assistance-of-counsel claims cannot be raised on direct appeal in Kentucky. (*See id.* at Page ID 300). Resolution of this issue on procedural-default grounds is more complicated.

In his supplemental RCr 11.42 motion, Damrell phrased this claim mostly as the denial of the opportunity to present a meaningful defense, similar to Claim 2. (R. 21-2, Page ID 347-49). However, he also briefly argued that counsel was ineffective for failing to pursue the issue. (*See id.* at Page ID 387). Because the state court did not address the ineffective-assistance-of-counsel version of this claim, the Court will review it *de novo*. *See Nields*, 482 F.3d at 450. But to the extent that Damrell wishes to assert his claim as the denial of the opportunity to present a meaningful defense, it is procedurally defaulted for the reasons noted in Claim 6.

20

Damrell fails to specify how counsel should have "pursue[d] this issue," but to the extent that he claims counsel should have argued that Trooper Pennington failed to preserve potentially exculpatory evidentiary material, i.e., items that could have been tested for fingerprints, counsel had no basis to do so, because as noted above in Claim 2, the record did not reveal any bad faith on Trooper Pennington's part as required under *Youngblood*. *See Wilson*, 874 F.3d at 479; *see also Youngblood*, 488 U.S. at 59 ("[T]he police do not have a constitutional duty to perform any particular tests."). Counsel's performance was thus not deficient and Damrell does not meet *Strickland*'s demanding standard. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial.").

### 8. Trial Court's Failure to Suppress the Black Bag

In his eighth claim, Damrell argues that the trial court should have suppressed a black shaving kit bag as evidence because Trooper Pennington violated police procedures in his handling of the bag. (R. 20, Page ID 304-06). Once again, he argues that this claim is not procedurally defaulted because ineffective-assistance-of-counsel claims cannot be raised on direct appeal in Kentucky. (*See id.* at Page ID 300).

While Damrell now argues that his counsel was ineffective for failing to pursue this issue (*see id.* at Page ID 306), he never presented an ineffective-assistance-of-counsel claim in his supplemental RCr 11.42 motion (*see* R. 21-2, Page ID 350-52)—he argued only that *the trial court erred* by failing to suppress the bag. Accordingly, for the reasons noted in Claim 6, this claim is procedurally defaulted.

### 9. Trial Counsel's Ineffectiveness for Not Pursuing Trooper Pennington's Pattern of Violations

In his ninth claim, Damrell argues that his trial counsel should have pursued Trooper Pennington's negligent pattern in handling the case and the cumulative effect of the errors on his

21

defense. (R. 20, Page ID 306-07). Specifically, he cites Trooper Pennington's testimony identifying him as the ATV rider, his mishandling of the black bag, his failure to follow police procedures, and failure to test evidence for fingerprints. (*Id.*).

As noted, the Kentucky Court of Appeals found this claim essentially duplicative of the second claim in Damrell's initial RCr 11.42 motion (Claim 5 here). *See Damrell*, 2015 WL 8527397, at *5. However, Damrell argues that this claim is not duplicative because it "specifically argues the cumulative effect of Trooper Pennington's corrupt handling of the evidence in this case." (R. 20, Page ID 301; *see* R. 35, Page ID 770).

To the extent that the Kentucky Court of Appeals misconstrued Damrell's claim and failed to address it as a stand-alone-cumulative-error claim, relief is unwarranted under *de novo* review because "cumulative error claims are not cognizable on habeas [review]." *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006); *see also Daniels v. Jackson*, No. 18-1342, 2018 WL 4621942, at *6 (6th Cir. July 17, 2018). To the extent that Damrell claims that counsel was ineffective for not arguing the cumulative effect of the alleged errors to the state trial court, his claim fails because none of the purported miscues were "themselves substantial[] [errors,] bordering, at least, on the prejudicial" for the reasons noted in Claim 3 (Trooper Pennington's identification of Damrell as the ATV rider) and Claim 10 (Trooper Pennington's mishandling of the black bag, failure to follow police procedures, and failure to test for fingerprints). *Brown v. Com.*, 313 S.W.3d 577, 631 (Ky. 2010). Accordingly, counsel was not ineffective for failing to raise a non-meritorious argument. *See Coley*, 706 F.3d at 752.

Damrell raised his remaining three federal habeas claims in his state court habeas petition. (R. 18, Page ID 251-57). The Kentucky Court of Appeals determined that state habeas relief was not warranted because the issues could have been raised in another proceeding. (*Id.* at Page ID

262.)  Specifically, the Court of Appeals concluded that Damrell's trial-counsel claims were addressed as ineffective-assistance-of-counsel claims in his RCr 11.42 motion and that CR 60.02 was "the proper vehicle for relief" for his remaining claims.  (*See* R. 18-1, Page ID 263).  The Respondent argues that Damrell has procedurally defaulted his claims by failing to properly raise them in state court.  (R. 29, Page ID 734-35).  Because Damrell's claim are essentially duplicative of his other claims, however, this court finds it more expedient to address them on the merits than to conduct a procedural-default analysis.  *See Bales v. Bell*, 788 F.3d 568, 573 (6th Cir. 2015) (noting that a federal court may decline to address a procedural-default issue and proceed on the merits).

## 10.    Trooper Pennington's Official Misconduct

In his tenth claim, Damrell argues that Trooper Pennington committed official misconduct, repeating arguments from his other claims, including that he failed to test for fingerprints, failed to maintain a chain of custody, and mishandled the black bag.  (R. 18, Page ID 251-56).

First, Damrell's complaints about Trooper Pennington not testing for fingerprints fail because Trooper Pennington had no constitutional duty to do so.  *See Youngblood*, 488 U.S. at 59. Second, Damrell's chain-of-custody issue is non-cognizable on habeas review.  *See Bey*, 500 F.3d at 519; *Gibson*, 2007 WL 3227579, at *5.  Lastly, Damrell's claim that Trooper Pennington failed to follow Kentucky police procedures in his handling of the black bag and other evidence does not implicate federal habeas review, which does not lie for state errors but is limited to Federal constitutional violations.  *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

## 11.    Trial Judge's Judicial Misconduct

In his eleventh claim, Damrell argues that the trial judge committed judicial misconduct by "failing to take appropriate action after trial counsel" stated that Kentucky boys don't hang each

other out to dry.  (R. 18, Page ID 256-57).  As noted in Claim 5, in context, this statement does not show that counsel was ineffective and accordingly the trial judge's failure to act upon it cannot be said to have constituted judicial misconduct or, more pertinently, denied Damrell any constitutional right.

### 12.    Trial Counsel's Breach of Contract and His Fiduciary Duty

In his twelfth claim, Damrell repeats his arguments that his trial counsel failed to communicate the four-year offer and refrained from impeaching Trooper Pennington because he did not want to ruin his reputation or marriage, adding new legal theories to these purported instances of deficient performance—breach of contract and fiduciary duty.  (R. 18, Page ID 257-60).  However, such theories are non-cognizable in federal habeas review, which, again, lies for Federal constitutional violations.  *See Estelle*, 502 U.S. at 67.  And to the extent that Damrell simply repeats his ineffective-assistance-of-counsel arguments from his prior claims, they fail for the reasons noted above in Claims 4 and 5.

## III.    CERTIFICATE OF APPEALABILITY

Damrell is not entitled to a certificate of appealability (COA).  Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Proceedings for the United States District Courts, the District Court must issue or deny a COA when it enters a final order adverse to the applicant.  A COA may issue only if a petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The Supreme Court explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "When a district court denies a

habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists would not debate the denial of Damrell's § 2254 petition or conclude that the issues presented are adequate to deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it will be recommended that a COA be denied upon the District Court's entry of its final order in this matter.

## IV.    CONCLUSION AND RECOMMENDATION

For the reasons stated herein, **IT IS RECOMMENDED** that:

1.    Damrell's § 2254 petition be denied and this matter be dismissed (R. 1; *see* R. 16, 18, 20);

2.    a COA be denied by the District Court in conjunction with the Court's entry of its final order in this matter;

3.    Judgment in favor of the Respondent be entered contemporaneously with the District Court's entry of its final order; and

4.    This case be stricken from the active docket of this Court.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (b) of the statute. *See also* Rules Governing Section 2254 Proceedings for the United States District Courts, Rule 8(b). Within fourteen (14) days after being served with a copy of this Report and Recommendation, any

party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Dated this 26th day of July, 2019.



**Signed By:**

*Candace J. Smith*

**United States Magistrate Judge**

J:\DATA\habeas petitions\2254 ineffective assistance counsel\16-161-KKC Damrell R&R final.docx